MICHAEL STERK,          )
                              )
        Plaintiff,         )
v.                           )     Cause No. 3:14-CV-1525
                              )
ZIMMER, INC.,          )
                              )
        Defendant.     )

## OPINION AND ORDER

This matter is before the court on the motion for summary judgment filed by Defendant Zimmer, Inc. (docket entry 35). Plaintiff Michael Sterk filed a response in opposition to the motion (DE 38) and Zimmer filed a reply (DE 43). For the reasons discussed below, the motion for summary judgment is GRANTED. The Clerk of the Court is directed to enter judgment in favor of Defendant on all clams asserted by Plaintiff.

## BACKGROUND

Plaintiff Michael Sterk worked at Zimmer as a production machinist from 2006 until September 5, 2013, when he was fired. Sterk alleges in his complaint that he was fired because of his age (he was over 40 at the time), in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 626 *et seq.* He also alleges that his termination violated Indiana common law because he was fired "in retaliation for exercising his duty and/or his right to report Defendant's failure to follow standard operating procedures." Complaint (DE 1), p. 3, ¶ 25. As to this second count, Sterk contends that his "termination . . . for reporting Defendant's failure to conform to procedure is contrary to public policy and actionable under common law." *Id.*, ¶ 26. Zimmer maintains, however, that it fired Sterk "after it investigated a complaint by a co-worker and

concluded that Sterk had mistreated the co-worker on several occasions . . . and purposely damaged Zimmer machinery." Defendant's Memorandum in Support of Motion for Summary Judgment (DE 36), p. 1. For these reasons, Zimmer argues that Sterk was not meeting the company's expectations and so it had a legitimate, non-discriminatory reason for firing him. Zimmer contends that Sterk's age claim fails from the outset, as he "cannot raise a genuine issue of material fact regarding the reason Zimmer terminated his employment, nor even establish a *prima facie* case of discrimination." *Id*. Zimmer also argues that Sterk's wrongful discharge claim under state law also fails "because . . . he cannot show that he was fulfilling a legal duty when he made a report to Zimmer's compliance hotline." *Id*.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *See id.* at 255. However, neither the "mere existence of some alleged factual dispute between the parties," *id.*, 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000).

Summary judgment is not a substitute for a trial on the merits nor is it a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. *See Shields Enterprises, Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992); *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1330 (7th Cir. 1989). If it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. *See Celotex*, 477 U.S. at 322; *Ziliak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003).

Courts must also be mindful "that employment discrimination cases typically involve questions of intent and credibility," and resolution of those issues is the sole province of the jury. *Alexander v. Wisc. Dep't of Health and Family Svcs.*, 263 F.3d 673, 681 (7th Cir. 2001). Weighing evidence and making credibility decisions are jury functions, and it is not appropriate for a judge to assume those functions when ruling on a motion for summary judgment. *Anderson*, 477 U.S. at 255. Accordingly, the court "'appl[ies] the summary judgment standard with special scrutiny to employment discrimination cases, which often turn on issues of intent and credibility.'" *Bob-Maunuel v. Chipotle Mexican Grill, Inc.*, 10 F. Supp. 3d 854, 873 (N.D. Ill. 2014) (quoting *Krchnavy v. Limagrain Genetics Corp.*, 294 F.3d 871, 875 (7th Cir. 2002)).

## DISCUSSION

Zimmer claims that it is entitled to judgment because its decision to fire Sterk was not based on his age or the fact that he lodged a complaint about the company's operating procedures, but rather because "he bullied [a] co-worker with an apparent physical impairment

3

and intentionally destroyed company property." Defendant's Brief, p. 2. Sterk claims that Zimmer's stated reasons for discharging him are pretextual. He claims that his comments to his co-worker, which Zimmer characterizes as bullying, were actually innocent, and that he did not destroy Zimmer property but instead altered a piece of equipment (known as a "burring wheel") only to make it usable. Plaintiff's Response, pp. 12-13. In short, this is a pretty typical employment discrimination case, with a plaintiff who is convinced he was fired illegally by a defendant who is convinced it was merely terminating a "bad apple."

### I. Age Discrimination Claim.

A plaintiff alleging employment discrimination can establish a *prima facie* case by utilizing either the direct or indirect method of proof. *Bisluk v. Hamer*, 800 F.3d 928, 934 (7th Cir. 2015). In this case, Sterk uses both methods to try to establish his age claim. *See* Plaintiff's Response, pp. 9, 16. Under the direct method, a plaintiff must show that his employer made an adverse employment decision "on an impermissible discriminatory basis." *Andrews v. CBOCS West, Inc.*, 743 F.3d 230, 234 (7th Cir. 2014). Under the indirect method of proof, a plaintiff meets his initial burden by showing that: (1) he is a member of a protected class; (2) he was meeting his employer's legitimate expectations; (3) he was subject to an adverse employment action; and (4) similarly situated employees who were not members of the protected class were treated more favorably. *Id.* (citing *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 696 (7th Cir. 2006)). If a plaintiff establishes a *prima facie* case of discrimination, the employer must "articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual." *Id.*

However, as the Seventh Circuit has explained, the terms "direct" and "indirect" are "somewhat misleading," and "[t]he distinction between the two avenues of proof is 'vague.'" *Luks v. Baxter Healthcare Corp.*, 467 F.3d 1049, 1052 (7th Cir. 2006) (quoting *Sylvester v. SOS Children's Villages Ill., Inc.*, 453 F.3d 900, 902–03 (7th Cir. 2006)). Because of this vagueness, the assessment of a plaintiff's discrimination claims at the summary judgment stage has become a finely nuanced endeavor, and so a careful examination of the applicable legal rules is necessary.

To start, in *Atanus v. Perry*, 520 F.3d 662 (7th Cir. 2008), the court, discussing the direct method of proof, wrote as follows:

> The nomenclature is misleading because the phrase "direct method" tends to imply that an employee only may proceed under the direct method with "direct evidence." *See Sylvester*, 453 F.3d at 902-03. We recently have explained, however, that this is not the case. "[D]irect" proof of discrimination is not limited to near-admissions by the employer that its decisions were based on a proscribed criterion (e.g., "You're too old to work here."), but also *includes circumstantial evidence* which suggests discrimination through a longer chain of inferences. *Luks*, 467 F.3d at 1053 (emphasis supplied).
>
> The focus of the direct method of proof thus is not whether the evidence offered is "direct" or "circumstantial" but rather whether the evidence "points directly" to a discriminatory reason for the employer's action. *Burks v. Wisconsin Dep't of Transp.*, 464 F.3d 744, 751 n. 3 (7th Cir. 2006) (noting that the "'direct method' . . . requires the plaintiff to put forth evidence that demonstrates that she was a member of a protected class and '*as a result* suffered the adverse employment action of which [s]he complains'" (quoting *Sylvester*, 453 F.3d at 902)).

*Atanus*, 520 F.3d at 671-72.

It is also important to note that in recent years the Seventh Circuit has sharpened the pencil a bit regarding the standard under which employment discrimination claims should be analyzed, regardless of the method of proof a plaintiff employs. As the court noted in *Good v. Univ. of Chicago Med. Ctr.*, 673 F.3d 670, 680 (7th Cir. 2012): ". . . we recognize that the direct

and indirect methods for proving and analyzing employment discrimination cases are subject to criticism. They have become too complex, too rigid, and too far removed from the statutory question of discriminatory causation. *See Coleman* [*v. Donahoe*], 667 F.3d [835], 862-63 [(7th Cir. 2012)] (Wood, J., concurring)." In fact, the Seventh Circuit has recognized that it is often important for courts to "look away from the intricacies of the direct and indirect methods . . . and focus on the summary judgment evidence as a whole" in order to assess the sufficiency of a plaintiff's claims. *Good*, 673 F.3d at 680. This is what has come to be known as the "convincing mosaic" approach (*see Coleman*, 667 F.3d at 860), a sort of hybrid approach that considers whether a plaintiff has presented sufficient circumstantial evidence to raise a reasonable inference of discrimination, without strict adherence to whether that evidence fits neatly into the "direct" or "indirect" categories. *Id.*

These are murky waters indeed, but there is one overriding principle that guides this court when ruling on a motion for summary judgment, to wit: whether a plaintiff utilizes the direct method or the indirect method of proof, "[t]he ultimate question under both methods . . . is 'whether a reasonable jury could find prohibited discrimination.'" *Hooper v. Proctor Health Care Inc.*, 804 F.3d 846, 853 (7th Cir. 2015) (quoting *Bass v. Joliet Pub. Sch. Dist. No. 86,* 746 F.3d 835, 840 (7th Cir. 2014)). The issue is not whether Sterk's evidence is properly characterized as direct, indirect, "a mosaic," or some other hybrid (Zimmer insists he can proceed *only* under the indirect method–*see* Defendant's Brief, p. 7), but whether that evidence is sufficient to permit a jury to find in his favor.

**A. Direct Method of Proof.**

Zimmer argues first that "Sterk has no direct or circumstantial evidence of discrimination,

6

and so must proceed under the indirect method of proof." Defendant's Brief, p. 7. Sterk

disagrees, so the court will begin with this dispute. Sterk claims that he has circumstantial

evidence that, considered as a whole, is sufficient to give rise to a reasonable inference that his

age was the motivating factor in Zimmer's decision to fire him. This evidence consists of the

following, according to Sterk:

1) "Over the course of . . . several months" after he reported the alleged use of nonconforming
parts, several coworkers, including a "Senior Department Supervisor . . . would refer to Sterk as
an old man, the old bastard, [and] grumpy old bastard." Plaintiff's Response, p. 6 (citations to
record omitted).

2) Another coworker "would walk by and ask 'How you doing old man, how's it going old
man?'" *Id*. This same coworker also allegedly "would ask Sterk's wife, 'How's your old man
doing?'" *Id*.

3) The senior department supervisor "asked Sterk's wife why she's married to such an old man."
*Id*., p. 7.

4) Sterk heard such comments "approximately 20 times." *Id*.

5) Similarly situated younger employees were treated more favorably in that two of Sterk's
coworkers who Zimmer determined had engaged in some form of sexual harassment received
only temporary suspensions rather than termination, while Sterk "was terminated without
receiving any coaching, a written warning or final warning; no progressive discipline." *Id*.

That is the sum and substance of Sterk's "direct" evidence. He claims it is sufficient to establish

a causal link between his age and his termination since the "[c]ircumstantial evidence needed to

prove intentional discrimination under the direct method" includes "ambiguous statements oral

or written, . . . and other bits and pieces from which an inference of discriminatory intent might

be drawn[,]" as well as evidence that employees not in the protected class "'received

systematically better treatment.'" *Id*., p. 16 (quoting *Troupe v. The May Department Stores Co.*,

20 F.3d 734, 736 (7th Cir. 1994)). Sterk contends that "[c]learly, Michael Sterk was treated more

harshly than similarly situated younger employees who engaged in more egregious behaviors, and the comments related to Sterk's age provide additional circumstantial evidence of age discrimination." *Id.*, p. 17.

The court agrees with Zimmer that this evidence is insufficient to establish age discrimination under the direct method of proof. First, argues Zimmer, the comments made by coworkers referencing Sterk's age do not constitute direct evidence of discrimination since "[i]solated comments of non-decision makers are 'stray remarks that cannot be direct evidence of discrimination' and do not establish that a particular decision was motivated by discriminatory animus." Defendant's Brief, p. 12 (quoting *Graber v. Mad Brewer, Inc.*, 773 F.Supp.2d 765, 780 N.D.Ind. 2011)). Zimmer notes that "'for a stray remark to be direct proof of discrimination, it must be shown to have some connection to the employment decision.'" *Id.* (quoting *Graber*, 773 F.Supp.2d at 781). In this case, Zimmer says, "[t]he comments alleged by Sterk cast no doubt on Zimmer's true reason for Sterk's termination. To begin, none of these individuals [who made the remarks were] involved in, let alone made, the decision to end Sterk's employment." *Id.* While Sterk insists that one of his supervisors "referred to him as the 'old man' two or three times over an eight month period[,]" it is undisputed that that supervisor was not involved in the decision to terminate Sterk. *Id.* (quoting Sterk Deposition, Defendant's Exh. 2 (DE 37-2), pp. 16-17). In fact, even though Sterk points to these comments as evidence of age discrimination, he admitted in his deposition that the supervisor's occasional references to Sterk's age might not have been intended as derogatory. Sterk testified as follows:

Q.: And what are you saying that [the supervisor] said to you?

A.: [He] referred to me as old man a few times. I mean, not very often, but just a

few times "old man," you know, "You're the old man of the group, you need to take care of stuff, you need to do this or you're" whatever.

Q.: How many times would you say?

A.: Two or three.

Q.: Over what period?

A.: I think [he] was my supervisor for eight months.
. . .

Q.: Do you think that he meant that in a derogatory way?

A.: No. I think he meant it as me being the senior person in the department. I mean, derogatory, I mean, I don't know. I didn't take it as being derogatory, but, you know, did he mean it that way, maybe. I mean, maybe he didn't like old people. I don't know.

*Id.* So the supervisor who made these stray remarks did not participate in the decision to terminate Sterk and Sterk, according to his own testimony, did not consider the remarks to be derogatory at the time they were made. In fact, he admitted that the remarks might only have been intended to reference the fact that Sterk was "the senior person in the department." For these reasons, such comments, even though they referenced Sterk's age, do not constitute direct evidence of discrimination.

Next, Zimmer argues that Sterk's evidence concerning two younger employees who Sterk claims received more favorable treatment than he also fails to constitute direct evidence of discrimination. Recall that Sterk argues that this evidence proves that he "was treated more harshly than similarly situated younger employees who engaged in more egregious behaviors[.]" Plaintiff's Response, p. 17. Contrary to Sterk's position, this evidence does not constitute direct proof of age discrimination. What it shows, if anything, is that Zimmer arguably doled out

discipline in a manner that Sterk believes was unfair–firing him for what he claims were minor transgressions (if they were transgressions at all) while only suspending the two younger employees for what Sterk contends were much more serious violations. The record is silent as to the details of the investigation and reprimand of the two younger employees.[1] The court is not, therefore, privy to those details. But it doesn't matter, since, as Zimmer points out, "Sterk was not disciplined under Zimmer's sexual harassment policy. . . . Sterk simply invites the Court to speculate that [the two younger employees] were involved in allegations of 'harassment' that were sufficiently comparable [to Sterk's alleged transgressions]. Although all reasonable inferences must be made in the non-movant's favor, such rank speculation would be inappropriate." Defendant's Reply, p. 8. Zimmer is correct that speculation and legal conclusions are insufficient to defeat summary judgment. *See, e.g.*, *Winsley v. Cook Cty.*, 563 F.3d 598, 605 (7th Cir. 2009) (rejecting plaintiff's 'bare assertions' that she had been 'mistreated because of her sex' as insufficient to prevail under the direct method); *Karazanos v. Navistar Transp. Co.*, 948 F.3d 332, 337 (7th Cir. 1991); *see also Roney v. Ill. Dep't of Transp.*, 376 F.Supp.2d 857, 864–65 (N.D.Ill. 2005) (rejecting plaintiff's claims to the extent 'based on his own uncorroborated, speculative and conclusory testimony and statements')." *Miller v. Sam's Club*, 2015 WL 5610768, at *6 (N.D.Ill. Sept. 22, 2015).

The same thing applies here. Sterk's attempts to present direct evidence of age discrimination fail since they are based only on occasional remarks by coworkers (not decision makers) referencing Sterk's age and Sterk's conclusory assertion that his age must have been the

---

[1] Zimmer notes that "Sterk could have, but did not, conduct discovery with respect to these employees in order to present accurate and admissible facts concerning them." Defendant's Reply, p. 6, n. 3.

motivating factor in Zimmer's decision to terminate him since the two younger employees were not fired even though Sterk believes their offenses were more serious than his. For these reasons, the court concludes that Sterk's attempts to present direct evidence of age discrimination are insufficient to defeat Zimmer's motion for summary judgment.

### B. Indirect Method of Proof.

The court now turns to analyzing Sterk's evidence and arguments under the indirect method of proof, i.e., by applying the traditional burden-shifting method. Zimmer maintains that Sterk cannot establish a *prima facie* case of age discrimination because 1) he was not meeting Zimmer's reasonable expectations, and 2) similarly situated younger employees were not treated more favorably.

As to the similarly situated argument, Zimmer maintains, again, that the fact that the two younger employees were suspended rather than fired does nothing to support Sterk's age claim since the conduct for which Sterk was fired was completely different from the conduct for which the two younger men were temporarily suspended. Zimmer notes that "employees receiving more lenient disciplinary treatment must at least share a 'comparable set of failings'" . . . , that "'[i]t is enough that the misconduct that led to the adverse job action in question is sufficiently distinct to render the proposed comparators not similarly situated' and that there were 'material distinctions' making the alleged similarly situated comparators inappropriate." Defendant's Reply, p. 8 (quoting *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 530 (7th Cir. 2003) and *Harris v. Warrick Cty. Sheriff's Dept.*, 666 F.3d 444, 449 (7th Cir. 2012)). Under this case law, argues Zimmer, the two younger employees are not similarly situated since the conduct they were disciplined for was materially different from the conduct that resulted in Sterk's termination.

In *Haywood*, the plaintiff alleged that she was fired due to her race, and in support of her claim pointed to two white coworkers whom she claimed received preferential treatment even though all three employees had similar performance ratings. The defendant company argued that the plaintiff was terminated for conduct that was different from that engaged in by the two white employees who were not fired. The court held that the two white employees were not similarly situated to the plaintiff and so could not be used as "comparators" for purposes of establishing a *prima facie* case. The court explained as follows:

> The only other evidence to which Haywood points is Lucent's allegedly more favorable treatment of the two white employees who received similar performance ratings. If [the decision maker] had cited Haywood's performance ratings as the reason for [her] termination, this might require further exploration. But he did not. He said that he was terminating Haywood because of her inability to accept and act on feedback, her problematic relationship with management, and her pattern of insubordination. Haywood has not pointed to evidence showing that the other two employees had a comparable set of failings, and thus no inference can be drawn from the fact that they were given another chance and she was not. *See, e.g.*, *Jones v. Union Pacific R.R. Co.*, 302 F.3d 735, 745 (7th Cir. 2002) (rejecting a similar "unusable comparison").

*Haywood*, 323 F.3d at 530. The Seventh Circuit went on to explain that "'[t]o establish that employees not in the protected class were treated more favorably, the [p]laintiff must show that those employees were similarly situated with respect to performance, qualifications and conduct.'" . . . As relevant here, this inquiry does not require "'near one-to-one mapping between employees,'" . . . but the employees receiving more lenient disciplinary treatment must at least share 'a comparable set of failings[.]'" *Id.*

Sterk's contention that his two coworkers engaged in more egregious behavior than he, even if accepted as true, would only be relevant if all three men had been disciplined for the same or similar conduct, which they were not. Given that Sterk's termination and his coworkers'

suspensions were based on completely (and undisputedly) different conduct, the two more fortunate men were not similarly situated to Sterk. As Zimmer points out, the Seventh Circuit rejected precisely such an argument in *Harris*, explaining as follows:

> Harris insists that his mistakes were less serious than those of his comparators, whose actions sometimes put lives at risk. We have repeatedly said we do not sit as a super-personnel department to determine which employment infractions deserve greater punishment. *See Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 697 (7th Cir. 2006). It is enough that the misconduct that led to the adverse job action in question is sufficiently distinct to render the proposed comparators not similarly situated. *See Haywood*, 323 F.3d at 530.

Harris, 666 F.3d at 449.

Sterk's age claim suffers from the same defect. Sterk, just like the plaintiff in *Harris*, also "insists that his mistakes were less serious than those of his comparators." But the undisputed facts are that the two younger employees Sterk points to as comparators were disciplined for conduct completely different from the conduct for which Sterk was fired. His argument on this point is based on a leap of faith. That is, the court should infer that age was the "but-for" factor behind Zimmer's decision to fire him based simply on the fact that the two other employees were younger and weren't fired. But this conclusion ignores the fact that the two younger men were disciplined for different reasons than Sterk, so as a matter of law they are not proper comparators and Sterk fails to establish the fourth prong of his *prima facie* case of age discrimination.

The Seventh Circuit has held that "[t]he ADEA sets a high bar: the plaintiff must prove by a preponderance of the evidence that age was the but-for factor—not simply a motivating factor—behind the adverse employment action." *Vukadinovich v. Hanover Community School Corp.*, 2015 WL 5432483, at *4 (N.D.Ind. Sept. 14, 2015) (citing *Gross v. FBL Fin. Svcs.*, 557 U.S. 167, 177-78 (2009)). Sterk's evidence of age discrimination is flimsy (and that's a generous

characterization) and most certainly does not "point[] directly to a discriminatory reason" for Zimmer's action. Sterk's evidence fairs no better under the indirect method of analysis. For the reasons already discussed, Sterk fails to prove that similarly situated employees were treated more favorably, and the age-related comments by coworkers also do not prove discriminatory intent.

Sterk's evidence of age discrimination, which consists only of occasional references by coworkers to Sterk's age and Sterk's assertion that two younger employees received more lenient discipline for conduct that Sterk believes was more egregious than his, fails to give rise to a reasonable inference that age was the "but for" reason for his termination. Maybe Zimmer's decision to fire Sterk was wrong. Maybe it was the result of a misunderstanding of Sterk's conduct, as he claims, or maybe it was downright foolish to fire a long-time employee for arguably minor transgressions. But once again, it doesn't matter if an employer takes adverse action against an employee for reasons that are unfair or misguided, as long as the action is not based on a legally impermissible reason. It is not the reasonableness of Zimmer's decision that is at issue, but rather the legality, and Sterk does not present nearly enough evidence to raise even a fact issue on this point. Accordingly, Zimmer is entitled to summary judgment on Sterk's age discrimination claim.[2]

---

[2] If an employment discrimination plaintiff fails to establish even one prong of his *prima facie* case, the defendant is entitled to summary judgment and the court need not consider the other prongs of the burden-shifting method or reach the pretext analysis. *Carlson v. CSX Transp.*, Inc., 83 F.Supp.3d 819, 825 (S.D.Ind. 2015). But in this case the issue of pretext is also pertinent to Sterk's state law claim, and so is addressed below. (This court has supplemental jurisdiction over Sterk's state law claim pursuant to 28 U.S.C. § 1367(a) since it is "part of the same case or controversy." *See Hoffman v. Dewitt County, Ill.*, 2016 WL 1273163, *4 (C.D.Ill. March 1, 2016).)

**II. State Law Wrongful Discharge Claim.**

**A. Public Policy Exception to Employment-at-Will Doctrine.**

It is well established that "Indiana follows the doctrine of employment at will, under which employment may be terminated by either party at will, with or without reason." *Wior v. Anchor Indus., Inc.*, 669 N.E.2d 172, 175 (Ind. 1996). This means that an employer can choose to terminate an employee at any time for any reason, good or bad (or no reason at all), so long as the reason does not rest on illegal ground, such as age, race, gender, religion, disability, etc. *Orr v. Westminister Vill. N., Inc.*, 689 N.E.2d 712, 717 (Ind. 1977). "The employment-at will doctrine has steadfastly been recognized and enforced as the public policy of this State," *Morgan Drive Away, Inc. v. Brant*, 489 N.E.2d 933, 934 (Ind. 1986), and is "deeply rooted in Indiana jurisprudence." *Jarboe v. Landmark Cmty. Newspapers of Ind., Inc.*, 644 N.E.2d 118, 121 (Ind. 1994).

There are limited exceptions to the employment-at-will doctrine. The Indiana Supreme Court "has recognized only three ways to avoid or rebut the presumption of at-will employment, or stated another way, three exceptions to the employment-at-will doctrine." *Orr*, 689 N.E.2d at 718. These exceptions are: (1) adequate independent consideration; (2) promissory estoppel; and (3) contravention of public policy. *Id*. The public policy exception is the exception at issue in the present case. There are two ways for a plaintiff to fit within the public policy exception and thus have a colorable wrongful discharge claim. First, an at-will employee may bring a claim if he is discharged for filing a worker's compensation claim. *Frampton v. Central Indiana Gas Co.*, 297 N.E.2d 425, 427-28 (Ind. 1973). Second, an at-will employee may bring a claim is if his discharge is in retaliation for refusing to violate a legal obligation that would result in penal

consequences, exercising a statutorily conferred personal right, or fulfilling a statutorily imposed duty. *Meyers v. Meyers*, 861 N.E.2d 704, 707 (Ind. 2007). If Sterk can establish that he was exercising a statutorily conferred personal right or fulfilling a statutorily imposed duty, and that doing so resulted in his termination, he would have a valid claim under the public policy exception to the employment-at-will doctrine. *McClanahan v. Remington Freight Lines, Inc.*, 517 N.E.2d 390, 392-93 (Ind. 1988). The Indiana Court of Appeals addressed a very similar situation in *Campbell v. Eli Lilly & Co.*, 413 N.E. 2d 1054 (Ind.Ct.App. 1980). In *Campbell*, an employee claimed he was terminated for reporting that his employer was not conforming to quality and safety standards in the production of pharmaceuticals. The court found that the plaintiff "nowhere demonstrated a statutory source for the alleged right he claims to have exercised, nor has he demonstrated a statutory source for the duty he claims to have fulfilled. We do not recognize the general public policy exception urged by Campbell to the venerable at will employment doctrine we reconfirm today." *Id.* at 1061.

Sterk claims that he fulfilled a duty to report Zimmer's use of commingled parts, as the use of such parts allegedly did not comply with company policy and certain laws. Complaint, p. 3, ¶¶ 23-26. Zimmer contends that Sterk's wrongful discharge claim fails from the get-go, since he cannot point to a specific statue or other law as the basis for his claim. Defendant's Memorandum, p. 14. Sterk points to Zimmer's Standard Operating Procedures, an internal operations and procedures manual, as the basis of his common law wrongful discharge claim. The specific language in Zimmer's SOP on which Sterk bases his claim is found in section 73.400 of the SOP and states, in relevant part, as follows:

The purpose of this operating procedure is to provide an overview of the processes

16

and standards that govern internal investigations and management of allegations of non-compliance, to be conducted in accordance with the applicable Zimmer Corporate Compliance Policies and Procedures as well as applicable national, state and local laws and regulations.

This operating procedure provides an overview of certain of the reporting obligations and procedures, internal investigation processes and Zimmer's processes for addressing alleged and confirmed instances of non-compliance by Zimmer Personnel, its distributors, agents, and sales associates. The reporting mechanisms are also available for use by third parties including customers and vendors.
. . .

Zimmer Personnel must report all known or suspected compliance issues related to Zimmer's operations to their manager or the Compliance Office, through the Compliance Hotline or other available reporting mechanisms. It is the independent duty of all Zimmer Personnel to abide by the Zimmer Compliance Program.

Zimmer SOP (DE 45) (filed under seal). The language of this procedure makes two things clear:

1) the Zimmer compliance reporting requirement is an internal, self-imposed requirement; and 2)

the requirement, while it makes reference to national and state laws and regulations, does not

provide "a statutory source for the duty [Sterk] claims to have fulfilled." *Campbell v. Eli Lilly*,

413 N.E. 2d at 1061. Zimmer contends that the SOP "is a Zimmer procedure, not a law,

regulation, or legal duty." Defendant's Memorandum, p. 16. This position is bolstered by the fact

that the SOP provides that Zimmer's internal compliance reporting procedure is "available for

use by third parties[.]" The clear language of the provision reveals that it is an attempt by

Zimmer to *ensure* that it complies with applicable national and state laws, by providing an

avenue for employees and even third parties to report suspected non-compliance so Zimmer can

investigate such claims. This is a very different animal from an obligation that is expressly

imposed by statute or other law. Sterk is trying to equate the Zimmer SOP provision to a legally

imposed duty, which in turn provides the basis for his argument that his discharge is actionable as an exception to the employment-at-will doctrine. But like his age claim, Sterk's evidence on this point is lacking.

Sterk's complaint includes only a few factual statements in support of his wrongful discharge claim. He states that he "believed that [Zimmer] was intentionally violating company policy and the law by attempting to use commingled parts." Complaint, p. 3, ¶ 23. He states that he "had a duty to report the commingled parts and fulfilled that duty by complaining to management." *Id*., ¶ 24. Sterk also claims that soon after he made his report, Zimmer "stated that it was investigating Mr. Sterk to establish a history of him harassing second shift employees." *Id*., p. 2, ¶ 9.

In his response to Zimmer's motion for summary judgment, Sterk elaborates a bit on what occurred. He claims that on the morning of "December 20, [2012][3], [he] called the Zimmer Alertline and reported a violation of Zimmer Standard Operating Procedures, claiming that Defendant commingled parts in violation of those procedures." Plaintiff's Response, p. 19. Sterk alleges that he was subjected to harassment from management and coworkers immediately after he reported his concerns. He says that "[a]t 10:00 p.m. that same day, Sterk was called into a meeting with the second and third shift supervisors and for two and a half hours he was questioned about his relationship with second shift employees. From that time until his termination, Sterk was treated like a leper, called derogatory names related to his age, and

_____

[3] Plaintiff's response brief states that Sterk made his complaint "on December 20, 2011," but that is a typo–his complaint about alleged commingled parts was made in December 2012. *See* Complaint, p. 2, ¶ 8; Plaintiff's Exh. 2, Declaration of Michael Sterk (DE 38-2), ¶ 6 ("On or about 8:00 a.m. on the morning of December 20, 2012, I called Zimmer's Alert Line and reported the commingling incident.").

subjected to harassing behavior such as having the word JERK printed out on company labels and stuck to his locker." *Id*. Based on this evidence, Sterk concludes that he "was subsequently terminated in retaliation for reporting commingling in violation of Zimmer policies based on national, state and local laws and regulations." *Id*. This last sentence is nothing more than a legal conclusion, of course, but within it lies the basis for Zimmer's motion for summary judgment on this issue. Zimmer's argument is that there *isn't* any national, state or local law or regulation that Sterk can hang his hat on in support of his argument that his termination fits within the public policy exception to the at-will doctrine. Lacking that, Zimmer contends, Sterk has no foundation on which to build his claim and it fails as a matter of law. Defendant's Memorandum, p. 15. Additionally, Zimmer argues that "[e]ven if Sterk had been fulfilling a statutorily imposed duty by making his Alertline report, Sterk's wrongful discharge claim also fails because he cannot raise a genuine issue regarding a causal nexus between the protected activity and his termination." *Id*., p. 17. Zimmer is correct on both points.

**B. Causal Nexus.**

Sterk admitted in his deposition that the provisions in Zimmer's SOP are not, in fact, law. Defendant's Statement of Material Facts, Deposition of Michael Sterk (DE 37-2), p. 6. (He added that "[a]t the time I worked at Zimmer I believed it to be true.") Based on this fact, Zimmer argues as follows:

> Without citing to a statute (and thus a statutorily-imposed duty), Sterk falls outside the public policy exception to Indiana's well-established employment-at-will doctrine. . . . Sterk cited Zimmer [SOP section] 73.400, titled "Investigating And Managing Allegations Of Noncompliance With Laws Governing Interactions With HCPs" as the source of his duty[.] . . . This procedure could not form the basis of his claim because, as Sterk acknowledges, it is a Zimmer procedure, not a law, regulation, or legal duty.

Defendant's Memorandum, p. 16 (citing *Carragher v. Ind. Toll Road Concession Co.*, 936

F.Supp.2d 981, 993 (N.D.Ind. March 27, 2013)). In *Carragher*, the court granted summary

judgment in favor of the defendant employer on the plaintiff's wrongful discharge claim because

the "plaintiff did not fulfill any statutorily-imposed duty when she spoke up about the purported

safety issues[.]" The court explained its holding as follows:

> There is no dispute in this case that plaintiff was an "at-will" employee, as her
> employment was not based on a contract for a definite or ascertainable amount of
> time. . . . Plaintiff's claim is that the [public policy] exception to the "at-will"
> doctrine . . . applies in this case, because she was punished for speaking up about
> the poor quality of parts being used in the Indiana toll system.
>  . . .
>
> The Seventh Circuit Court of Appeals considered an argument similar to
> plaintiff's in *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 503–04 (7th Cir. 1999)
> (examining Indiana law). In that case, the employee argued that he was terminated
> for reporting a claimed safety violation to his employer's safety division. *Id.* at
> 504. The Seventh Circuit held that his situation did not fit into the [public policy]
> exception to the "at-will" employment doctrine because the employee did not
> fulfill any statutorily-imposed duty when he reported the violation to his
> employer's safety division. What Indiana law protected, the court reasoned, was
> the filing of a complaint with the state occupational safety commission. *Id.* . . .
> Because the employee had only reported the claimed violation to his employer,
> and not to the state commission, the [public policy] exception provided him with
> no protection from termination. *Id.* at 504.

*Carragher*, 936 F.Supp.2d at 993. Sterk's situation is virtually identical. He reported what he

believed to be a problem regarding commingled parts. When he made that complaint, on

December 20, 2012, he believed that section 73.400 of Zimmer's SOP imposed some sort of

legal duty on him to report his concerns, since it includes the phrase "national, state and local

laws and regulations." But believing doesn't make it so. Sterk made an internal complaint about

what he perceived to be an improper commingling of parts in the Zimmer manufacturing process

or procedure. But as *Carragher* informs, this is insufficient to constitute a "statutorily imposed duty" and therefore insufficient to support a claim for wrongful discharge based on Indiana's public policy exception to the employment-at-will doctrine.

Sterk presents nothing else to support his position. In fact, he dedicates less than two pages of his 20-page brief to the entire issue of his wrongful discharge claim. Sterk simply reiterates his argument that "Zimmer cannot deny that its procedures clearly and unequivocally state that they incorporate national, state and local laws and regulations." Plaintiff's Response, p. 19. Sterk cites no authority to support his argument that the language included in Zimmer's SOP somehow gives rise to the type of legal obligation that would in turn support a common law wrongful discharge claim. For this reason, Zimmer is entitled to summary judgment on this claim.

Zimmer is also correct that Sterk's wrongful discharge claim is insufficient as a matter of law since Sterk fails to present evidence of a causal nexus between his report and his termination. Sterk's evidence on this point consists of the following: 1) he was called into a 2 ½ hour meeting with management on the same day that he made his Alertline report, at which meeting he was "questioned about his relationship with second shift employees[,]"; and 2) "[f]rom that time until his termination, [he] was treated like a leper, called derogatory names related to his age," and had the word "jerk" pasted on his locker. This evidence is insufficient to even raise a genuine issue of fact regarding a causal nexus between Sterk's internal complaint and his termination. As Zimmer correctly notes in its memorandum, "'[i]n order to survive summary judgment on this claim, [plaintiff] needs to establish a causal nexus between his termination and the [statutorily protected activity] . . .'" Defendant's Memorandum, p. 17 (quoting *Ransel v. CRST Lincoln Sales, Inc.*,

2014 WL 1207432, at *9 (N.D.Ind. March 24, 2014)). As the court also explained in *Ransel*, "[i]n analyzing this issue, Indiana courts particularly look to 'proximity in time between the filing of the claim and the termination' and 'evidence that the employer's asserted lawful reason for the discharge is a pretext.'" *Id.* (quoting *Hudson v. Wal–Mart Stores, Inc.*, 412 F.3d 781, 785 (7th Cir. 2005)). Zimmer maintains that "[t]he significant period of time between Sterk's Alertline report" and his termination "defeat[s] any argument of a causal connection." Defendant's Memorandum, p. 17. Zimmer also contends that several "intervening events" related to alleged improper behavior by Sterk provide further proof that his termination was not causally related to his report about commingled parts. *Id.*

It is undisputed that Sterk lodged his internal complaint in December 2012 and that he was terminated on September 3, 2013. A nine-month period between a plaintiff's protected activity and his termination is, as a general rule, too long a duration to give rise to an inference of retaliatory motive. *See, e.g., Mintz v. Caterpillar Inc.*, 788 F.3d 673, 681 (7th Cir. 2015) (nine month period between alleged protected activity and adverse action is "considerable" and therefore "suggests no connection between them."). However, a long lapse of time between the employee's activity and his discharge is not fatal to his claim, assuming he presents additional evidence to establish the causal connection. *See Markley Enters. Inc. v. Grover*, 716 N.E.2d 559, 565 (Ind.Ct.App. 1999) (holding that a six-month span between the plaintiff's claim and his discharge "sufficed when the other evidence before the court calls into doubt the employer's reasons for discharge."). To do this, a plaintiff must show that "an employer's proffered reason for termination . . . is patently inconsistent with the evidence before the court." *Id.* (citing *Watkins v. Sommer Metalcraft Corp.*, 844 F.Supp. 1321, 1326 (S.D.Ind. 1994)). In other words,

Sterk must establish that Zimmer's reason for firing him, i.e., that he engaged in improper behavior, was pretextual. He fails to do so.

Zimmer argues that Sterk was fired as a result of improper workplace conduct and not for any retaliatory reason. This improper conduct consisted mostly of Sterk's alleged "bullying" of a coworker and his alleged intentional destruction of company property, although those aren't the only issues Zimmer claims it had with Sterk. As to the first matter, Zimmer claims that "[i]n early August 2013, [a] temporary worker . . . complained about Sterk's treatment of him. . . . Zimmer promptly initiated an investigation into [the worker's] complaint," which was conducted by "investigators Olga Rivera, Human Resources Manager, and Todd Puckett, Associate Director of Manufacturing[.]" Defendant's Memorandum, p. 2. The investigation revealed that Sterk had asked the temporary worker, who had a physical condition that caused him to walk with a limp, why people called him "sidewinder." Zimmer "concluded that Sterk's question to [the worker] . . . was not innocent, as Sterk claims, but rather was meant to tease [the worker] about his physical condition." *Id*. (citing Declaration of Olga L. Rivera, DE 37-1). Rivera also states in her declaration that two other coworkers "reported that Sterk was bullying and intimidating coworkers and disrupting the work environment." *Id*., ¶ 4. And, of course, Zimmer concluded that Sterk had intentionally destroyed company property when he "deliberately ground down a wheel used to smooth products (a step in the finishing process called 'deburring')." *Id*. Finally, Rivera's affidavit explains that "[t]hree other employees . . . complained about Sterk's workplace behavior between October through December 2012." *Id*., ¶ 6. Zimmer attaches copies of Rivera's written report memorializing the investigation and its findings, as well as an email circulated among Zimmer managers. DE 37-1, pp. 5-12. Those two documents, in addition to supporting

the statements made by Rivera in her affidavit, also reveal many other instances of what Zimmer claims was inappropriate behavior by Sterk, but the court need not recount all of that here. The point is that Rivera concluded that Sterk's "pattern of behavior[,] which includes intimidating and bullying co-workers is disruptive, unproductive and damaging to the team environment–all contrary to Zimmer's best interest." *Id.*, p. 8. As a result of the investigation, Rivera recommended that Sterk be terminated.

Again, Sterk argues that his comment to the temporary worker was not intended to be derogatory or insulting, and that he "admitted to cutting a 1-inch wheel down to a ½ an inch when the department quit using 1-inch wheels as part of a cost reduction[,]" but that his actions did not constitute "destruction" of company property. Plaintiff's Response, p. 12, n. 2; p. 13, n. 2. Sterk succeeds in raising questions of fact here. The problem for him is that they are not material. It does not matter whether Zimmer misunderstood or misinterpreted Sterk's comment to his coworker or whether the company misunderstood the reason Sterk reduced the size of a burring wheel. Perhaps Sterk is right and Zimmer really got things wrong here, but that is still not enough to establish a causal nexus between his Alertline report and his termination nine months later or, stated another way, it fails to raise a genuine issue of fact regarding pretext. It bears repeating that federal courts do not "sit as . . . 'super-personnel department[s],' second-guessing an employer's legitimate concerns about an employee's performance." *Assibey-Mensah v. Indiana University Board of Trustees*, 2016 WL 866705, at *6 (N.D.Ind. March 7, 2016) (quoting *Mintz*, 788 F.3d at 680)). In analyzing pretext, "the question is never whether the employer was mistaken, cruel, unethical, out of his head, or downright irrational in taking the action for the stated re ason, but simply whether the stated reason *was* his reason: not a good reason, but the true

reason[.]" *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 418 (7th Cir. 2006) (italics in original). Sterk fails to raise a genuine issue with regard to pretext and therefore does not establish a causal link between his activity and his termination. Accordingly, his state law wrongful discharge claim fails for this reason also.[4]

Even when all reasonable inferences from the facts are drawn in his favor, Sterk fails to raise any material issue of fact that requires resolution by a jury. "If it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated." *Celotex*, 477 U.S. at 322; *Ziliak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003). That is the situation here, and Zimmer is entitled to summary judgment on both of Sterk's claims.

## CONCLUSION

For the reasons discussed above, the motion for summary judgment (DE 35) is GRANTED. The Clerk of the Court is directed to enter judgment in favor of Defendant on all claims asserted by Plaintiff.

Entered: April 19, 2016.

　/s/　William C. Lee　
William C. Lee, Judge
United States District Court
Northern District of Indiana

---

[4] The court's analysis and conclusion on the issue of pretext applies equally to Sterk's age claim, even though, as noted earlier, the court need not reach the pretext analysis in the context of that claim since Sterk's evidence and arguments fail to get him that far along in the burden-shifting process (see note 2 above).